**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GIOVANNI WELLS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:25-cv-02730-L** |
| | § | |
| **CITY OF DALLAS/DALLAS POLICE DEPARTMENT,** | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss Plaintiff's Original Complaint and Brief in Support (Doc. 14) ("Motion"), filed December 16, 2025. After considering the Motion, response, reply, pleadings, and applicable law, and for the reasons set forth herein, the court **grants** the Motion (Doc. 14) and **dismisses with prejudice** all claims as time-barred.

### I. Factual Background and Procedural History

This is an employment discrimination case.[1] Mr. Wells began his career with the Dallas Police Department ("DPD") on January 10, 2007. Compl. ¶ 20. Throughout his career, Mr. Wells served with distinction, rising to the rank of Lieutenant and being assigned to a prestigious federal narcotics task force—a position recognized as a fast track to promotion to Major. *Id.* ¶¶ 21, 25-29. Prior to the events giving rise to this lawsuit, Mr. Wells had only one minor disciplinary infraction in 2009 and no citizen or colleague complaints. *Id.* ¶¶ 22-23.

[1] The court's recitation of the facts is taken from the Complaint (Doc. 1). At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

In July 2020, another DPD officer, Reginald Jones, solicited Mr. Wells to participate in what Jones described as a "gifting circle." *Id.* ¶¶ 33-35. Mr. Wells participated from July 2020 until August 2020, when he informed Officer Jones by telephone that he would no longer participate. *Id.* ¶¶ 36-39. The alleged illegal pyramid scheme was the subject of a criminal investigation that began in September 2020. *Id.* ¶¶ 33-36, 40. Mr. Wells did not organize or promote the pyramid scheme—he merely participated for approximately one month before withdrawing. *Id.* ¶¶ 82-83.

In August 2021, the City of Dallas (the "City") removed Mr. Wells from the narcotics task force assignment and placed him on administrative leave because of the allegations against him in the pending criminal investigation. *Id.* ¶ 44. That same month, the City also allegedly disclosed Mr. Wells's name when communicating with the media about the pyramid scheme case. *Id.* ¶ 47. Additionally, prior to the conclusion of the investigation, the City allegedly circulated an internal document implying that Mr. Wells had engaged in a criminal act. *Id.* ¶¶ 48-49.

In October 2021, Mr. Wells's case was referred to a grand jury, and he testified before the grand jury in February 2022. *Id.* ¶¶ 53, 55. He returned from administrative leave the following month. *Id.* ¶¶ 44-45, 56. In September 2022, DPD began an administrative investigation into Mr. Wells's actions regarding the pyramid scheme. *Id.* ¶ 58. The administrative investigation ultimately concluded that he had violated section 4.3 of DPD's Code of Conduct, which prohibits employees from engaging in conduct that adversely affects the morale or efficiency of the department or that has a tendency to adversely affect, lower, or destroy public respect and confidence in the department or officer. *Id.* ¶¶ 63-64. As a result, the City terminated Mr. Wells's employment on March 30, 2023. *Id.* ¶ 65.

Mr. Wells subsequently appealed the disciplinary action, and on September 30, 2024, an administrative law judge ("ALJ") issued an order reinstating Mr. Wells, reducing his termination to a 75-day unpaid suspension, and awarding him backpay for the remainder of the time he was unemployed. *Id.* ¶¶ 67-79. Mr. Wells was over the age of 50 when the events at issue in this lawsuit occurred. *Id.* ¶¶ 11, 43, 111, 142.

Mr. Wells, who is currently employed with DPD and holds the rank of lieutenant (*id.* ¶ 79), alleges that other DPD officers who engaged in "equivalent or more egregious" acts received more favorable treatment than he did. *Id.* ¶ 80. He alleges that fourteen other officers were involved in the same pyramid scheme and considered co-conspirators, yet they received less discipline than he did. *Id.* ¶¶ 85, 87-88. He further asserts that the fourteen co-conspirators included Hispanic and White officers, female officers, and officers younger than forty. *Id.* ¶ 89. Like Mr. Wells, these fourteen officers were placed on administrative leave and had their names released to the public and internally. *Id.* ¶ 86.

Mr. Wells also contends that the City treated him less favorably than officers involved in a second, unrelated pyramid scheme. *Id.* ¶¶ 90-101. He alleges that one of the accused officers in the second pyramid scheme was a female sergeant, and he asserts that her conduct was more egregious than his because he merely participated in the first pyramid scheme, whereas the female sergeant organized, participated in, and promoted the second pyramid scheme. *Id.* ¶¶ 36, 91-92, 102. Mr. Wells alleges that the female sergeant and other officers involved in the second pyramid scheme received more favorable treatment than he received because they were not placed on administrative leave, transferred, or disciplined. *Id.* ¶¶ 93-95, 98-102. Additionally, Mr. Wells alleges that the City did not release the names of the second group of officers, either internally or to the public. *Id.* ¶¶ 96, 101.

In March 2025, Mr. Wells filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶¶ 9, 11. On July 9, 2025, the EEOC issued him a "Right to Sue Letter." *Id.* ¶ 15. On October 7, 2025, Plaintiff filed his Complaint alleging: (1) discrimination on the basis of race, sex, and age under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and (2) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1).

The City moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss 6.[2] The Motion has been fully briefed and is ripe for disposition.

## II. Rule 12(b)(6) Legal Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in

[2] Citations to the record and briefs refer to the CM/ECF page numbers at the top of the page, rather than the parties' pagination at the bottom.

fact)." *Id.* (quotation marks, citations, and footnote omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way:

> A motion to dismiss for failure to state a claim concerns the formal sufficiency of the statement of the claim for relief, not a lawsuit's merits. So when reviewing such a motion, we assume that the facts the complaint alleges are true and view those facts in the light most favorable to the plaintiff. The complaint survives if it contains sufficient factual matter . . . to state a claim to relief that is plausible on its face.

*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (citations and quotation marks omitted). Accordingly, the denial of a 12(b)(6) motion has no bearing as to whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.

## III. Analysis

In support of its Motion, the City contends that "[a]ll of Plaintiff's discrimination claims fail as a matter of law because they are time-barred and because Plaintiff has not adequately pled that he was treated less favorably than similarly situated employees outside of his protected classes." Mot. Dismiss 6. In addition, the City argues that "Plaintiff cannot bring any viable discrimination claim against DPD because it is a non-jural entity." *Id.*

**A. DPD Lacks the Capacity to be Sued**

The City first contends that "Plaintiff cannot bring any viable discrimination claim against DPD because it is a non-jural entity." Mot. Dismiss 10 (citing cases). Mr. Wells "does not contest that the Dallas Police Department, as a subdivision of the City, lacks the capacity to be sued independently under Texas law." Pl.'s Resp. 6 (Doc. 15-1) (citing *Hall v. City of Dallas*, 2025 WL 1447433, at *2 (N.D. Tex. May 19, 2025)). Moreover, a subdivision or a department of a home-rule city, such as the City of Dallas, has no jural existence, meaning it cannot sue or be sued. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). As DPD lacks the capacity to be sued, the court **dismisses** all claims against it.

**B. Plaintiff's Discrimination Claims are Time-Barred**

The City moves to dismiss Mr. Wells's race, age, and sex discrimination claims as time-barred. Specifically, the City contends that he failed to file his Charge with the EEOC within 300 days after the alleged unlawful employment practices took place. Mot. Dismiss 11; Reply 2 (Doc. 20). In his response, Mr. Wells fails to address the majority of the City's arguments. The only discrimination claims that Mr. Wells argues were timely are those based on the ALJ's September 30, 2024 decision to convert his termination to a 75-day suspension, which is within the 300-day filing window. *See* Pl.'s Resp. 7-8; Compl. ¶¶ 9, 65, 71-77, 118, 133, 143. For the reasons that follow, the court determines that all of Mr. Wells's discrimination claims are untimely.

Before filing suit, a plaintiff must exhaust his or her administrative remedies by filing a discrimination charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1). The same is true for ADEA claims. *See Tyler v. Union Oil Co.*, 304 F.3d 379, 384 (5th Cir. 2002). Because Texas has an agency for receipt of civil rights complaints, that is, the Texas Workforce Commission Civil Rights Division ("TWC"),

and is therefore known as a "deferral state," Title VII expands the period to file a charge with the EEOC to 300 days if the complainant has filed a timely charge with state agency authorized to receive such within 180 days of the unlawful act. 42 U.S.C. § 2000e-5(e)(1). Failure to file a timely charge with the EEOC, which allows the agency to investigate and, if appropriate, negotiate a resolution with the employer, bars suit in federal court. *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

***1. Race, Sex, and Discrimination Claims (other than those based on suspension)***

The court first addresses Mr. Wells's discrimination claims, with the exception of his discrimination claims based on his suspension by the ALJ following his termination. The City moves to dismiss these discrimination claims as time-barred because Mr. Wells failed to file his Charge with the EEOC within 300 days after the alleged unlawful employment practices took place. Mot. Dismiss 11.

As a threshold matter, Mr. Wells fails to respond to this argument and, therefore, has abandoned those claims. *See* Pl.'s Resp. 7-8. On this basis alone, the court grants the City's Motion and dismisses each of those race, sex, and age discrimination claims. *See Arkansas v. Wilmington Tr. Nat'l Ass'n*, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.) (stating that "[f]ailure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level" and citing *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)); *e.g., McWilson v. Bell Textron Inc.*, 2024 WL 3585615, at *2, *9 (N.D. Tex. July 30, 2024) (dismissing discrimination claims with prejudice where plaintiff failed to respond to defendant's argument that those claims were time-barred).

Even had he responded, the court would conclude that these claims are time-barred. Mr. Wells alleges that he filed his Charge in March 2025. Compl. ¶ 9. Thus, May 5, 2024 marks 300

days prior to March 1, 2025 (the earliest possible alleged filing date). *Id.* All race, sex, and age discrimination claims based on events occurring before May 5, 2024 are, therefore, time-barred. Mr. Wells alleges that the City discriminated against based on his race, sex, and age by: removing him from the narcotics task force on August 26, 2021 (*id.* ¶¶ 44, 118, 133, 143); placing him on administrative leave on August 26, 2021 (*id.*); releasing his name to the media in August 2021 (*id.* ¶¶ 47, 118, 133, 143); referring his case to a grand jury in October 2021 (*id.* ¶¶ 53, 118, 133, 143); and terminating his employment on March 30, 2023 (*id.* ¶¶ 65, 118, 133, 143). Because all of these discrete acts occurred well more than 300 days prior to March 1, 2025, all of Mr. Wells's corresponding race, sex, and age discrimination claims are time-barred. The court, therefore, grants the City Motion and dismisses these claims as time-barred.

#### *2. Race, Sex, and Age Discrimination Claims Arising from ALJ's Reduction of Plaintiff's Termination to a Suspension*

Unlike the claims discussed above—which Mr. Wells appears to have conceded were untimely by his failure to respond to the City's arguments—Mr. Wells contends that his discrimination claims based on the ALJ's September 30, 2024 decision to convert his termination to a 75-day suspension are timely, as the ALJ's decision is within the 300-day filing window. *See* Pl.'s Resp. 7-8; Compl. ¶¶ 65, 71-77, 118, 133, 143. Specifically, Mr. Wells argues that the ALJ's suspension is a new adverse action because it is a different type of discipline than a termination. Pl.'s Resp. 7-8. In support, he cites only one case, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72 (2006), which he cites for the proposition that a 37-day suspension constituted an adverse action even though the employee later received backpay. *Id.* at 8. The City maintains that "Plaintiff's reliance on *Burlington* is unavailing." Reply 4. The court agrees.

In *Burlington*, the Supreme Court held that adverse actions are not limited to ultimate employment decisions in the retaliation context. *See Burlington*, 548 U.S. 67, 72-73. The Court

did not address whether any Title VII claims were filed timely or whether a decision on appeal constituted an independent adverse action. Further, as the City correctly notes, "the suspension at issue in *Burlington*—like Mr. Wells's termination—was the original action that was subsequently modified on appeal." Reply 4 (citing *Burlington*, 548 U.S. 58-59; Compl. ¶¶ 65, 71, 74-76). Here, as the court previously determined, all discrimination claims based on Mr. Wells's termination are time-barred.

Further, the court agrees with the City that "the ALJ's ruling, which is inextricably tied to Plaintiff's March 30, 2023 termination, does not constitute an independent adverse action, and Plaintiff cannot rely on the City's internal appeals process to save his untimely termination claim." Reply 12. As the Fifth Circuit recently explained:

> The employer's decision is not made any less final—and accrual is not delayed—by the existence of a grievance process. Indeed, the process "by its nature, is a remedy for a prior decision, not an opportunity to *influence* that decision before it is made." [*Delaware State Coll. v.] Ricks*, 449 U.S. [250,] 261 [(1980)]. For this reason, the "pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Id.*

*Stanley v. Morgan*, 120 F.4th 467, 471 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1314 (2025). (emphases in original).

It is a "long-settled principle" in the Fifth Circuit that the U.S. Supreme Court's decision in *Ricks* "foreclosed delayed accrual and equitable tolling arguments based on an employee's decision to pursue an administrative appeal." *Id.* at 471-72 (citing cases); *see also Hartz v. Administrators of Tulane Educ. Fund*, 275 F. App'x 281, 288 (5th Cir. 2008) ("[T]he Supreme Court was clear in *Ricks* that grievance procedures, **no matter the outcome therein**, do not alter the date that the limitations period begins to run.") (emphasis added). Further, the allegations in the Complaint implicitly concede that the ALJ's ruling is inextricably tied to Plaintiff's March 30, 2023 termination and is not an independent adverse action. *See* Compl. ¶ 75 ("In lieu of

termination, Judge Washington determined that Mr. Wells would serve a 75-day suspension without pay as the final disciplinary action."). Similarly, in his Response, Mr. Wells describes his suspension as a "substitut[ion]" for his earlier termination. Pl.'s Resp. 8. Finally, the court rejects Mr. Wells's contention that because his termination was converted to a suspension by the ALJ, his case is different. Pl.'s Resp. 7-8. As the City notes, this "is a distinction without a difference." Reply 4.

For these reasons, the court **grants** the City's Motion to dismiss Mr. Wells's suspension-related race, sex, and age discrimination claims.[3]

## IV. Amendment of Pleadings

In his Response, Mr. Wells requests leave to amend his pleadings. Pl.'s Resp. 11. The City opposes his request for leave to amend. Reply 9.

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states, "[t]he court should freely give leave when justice so requires" is not without limitation. Fed. R. Civ. P. 15(a)(2). The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

[3] The court's ruling obviates the need to address the City's remaining arguments in support of its Motion.

When a plaintiff has previously amended his pleadings, "[a]t some point, a court must decide that a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986); *see also Schiller*, 342 F.3d at 567 (citation omitted).

The City opposes Mr. Wells's request for leave to amend on numerous grounds. Among other things, the City contends that Mr. Wells's request for leave to amend should be denied because (i) "it does not comply with Local Rule 15.1, which requires a party to attach a proposed amended pleading"; (ii) "any potential amendments in this case would be futile" as Plaintiff's claims are time-barred; and (iii) "DPD is a non-jural entity that lacks the independent capacity to be sued." Reply 9.

Although Mr. Wells has not previously had an opportunity to amend his pleadings, here, the court determines that any amendment would be futile and unnecessarily delay the resolution of this action, as his discrimination claims are time-barred, and there is nothing he can do to overcome this legal hurdle. Accordingly, the court **denies** his request for leave to amend his pleadings. *See Newby v. Enron Corp.*, 542 F.3d 463, 469 (5th Cir. 2008) ("[A] court need not grant leave to amend when the filing would be futile because the proposed claims are time-barred.") (citing *FDIC v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994)); *Rojas v. Pegasus Foods Inc.-Astrochef Inc.*, 2023 WL 5437176, at *8 (N.D. Tex. July 20, 2023) (leave to amend time-barred defamation claim denied as futile).

## V. Conclusion

For these reasons, the court **grants** the City's Motion to Dismiss Plaintiff's Original Complaint (Doc. 14) and **dismisses with prejudice** all claims alleged in the Complaint as they are

time-barred. In accordance with Rule 58(a) of the Federal Rules of Civil Procedure, judgment in favor of the City of Dallas/Dallas Police Department will issue by separate document.

**It is so ordered** this **30th** day of **September, 2026**.

Sam A. Lindsay
United States District Judge